**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ORLANDO ADAMS,

      Petitioner,

-vs-                                 Case No.  8:07-CV-1880-T-27EAJ

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

    Petitioner Orlando Adams (hereinafter "Petitioner") filed a petition for the writ of habeas corpus pursuant to Title 28 U.S.C. § 2254 ("petition"). (Dkt. 1).  Petitioner challenges his convictions for conspiracy to traffic in heroin, and trafficking in illegal drugs entered in 2002 by the Thirteenth Judicial Circuit Court in Hillsborough County, Florida.  (Id.).  Respondent filed a response to the petition. (Dkt. 8).  Petitioner filed a reply to Respondent's response.  (Dkt. 13).  After consideration, Petitioner's petition is DENIED.

    A recitation of the procedural history of Petitioner's criminal convictions is not necessary to the resolution of his habeas claims because Respondent does not dispute the timeliness of the petition, nor assert that the claims are not exhausted in state court.  Furthermore, an evidentiary hearing is not required for the disposition of this matter.  Rules Governing Section 2254 Cases 8(a) (2010).

### STANDARD OF REVIEW

    Under 28 U.S.C. § 2254(d) and (e)  as amended by the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA"), this Court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law, including constitutional issues, must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362, 386 (2000). It is not enough that the federal courts believe that the state court was wrong; the state court decision must have been "objectively unreasonable." *Id.*; *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

## INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

*Strickland v. Washington*, 466 U.S. 668 (1984), governs ineffective assistance of counsel claims.[1] *Strickland* noted that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 692-93. There is a strong presumption, however, that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Because the court presumes effective assistance of counsel, Petitioner must prove both constitutionally deficient performance and resulting prejudice under *Strickland* to receive relief. *Id.* at 687.

To satisfy the two-part *Strickland* test, Petitioner must show a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Consequently, Petitioner may only succeed in claiming ineffective

---

[1]*See Chatom v. White*, 858 F.2d 1479, 1485 (11th Cir. 1988); *Dobbs v. Turpin*, 142 F.3d 1383, 1387 (11th Cir. 1998); *Francis v. Dugger*, 908 F.2d 696, 702 (11th Cir. 1990).

2

assistance if counsel failed to perform in a manner which was constitutionally compelled and that failure undermined the outcome of the trial. *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665, n. 38 (1984)).

When an ineffective assistance of counsel claim concerns the rejection of an offered plea agreement, the petitioner must "establish a reasonable probability that, absent counsel's alleged ineffective assistance, he would have accepted the plea agreement." *Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991) (addressing petitioner's claim that counsel was ineffective for advising him that a plea offer was unacceptable); *see also Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995) (addressing petitioner's claim that counsel failed to advise him of the possible sentence he might face if he did not accept a plea offer and proceeded to trial, and holding that a petitioner "'must show that there is a reasonable probability that, but for counsel's errors, he would . . . have pleaded guilty and would [not] have insisted on going to trial.'" (alteration in original) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58 (1985))). The petitioner's "after the fact testimony concerning his desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer." *Diaz*, 930 F.2d at 835;   *see also Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987) (holding that without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not sufficient).

## DISCUSSION

Ground One

In Ground One of his petition, Petitioner contends that counsel was ineffective in advising him to reject two plea agreements offered by the State. The first offer was a mandatory minimum fifteen year prison sentence, and the second was  a mandatory minimum ten year prison sentence.

3

Petitioner asserts that counsel advised him not to accept the offers because the State's evidence was insufficient to support a conviction. He also asserts that counsel failed to accurately apprise him of the risks of going to trial, and the sentences he may be exposed to if found guilty. Based on counsel's advice, Petitioner rejected the State's offers and proceeded to trial. He was found guilty on two counts and sentenced to 30 years imprisonment on both counts. He avers that had counsel accurately informed him of the strength of the State's case, and that he faced a more severe penalty if he were convicted at trial, he would have accepted the State's plea offers.

Petitioner raised this claim in state court as Ground One of his Rule 3.850 post-conviction motion. In denying the claim, the state post-conviction court stated:

> In ground one of his Motion, Defendant alleges ineffective assistance of counsel for advising Defendant to reject two pre-trial plea agreement offers from the State. Specifically, Defendant contends that, in reliance on counsel's advice, he rejected the State's fifteen (15) year offer and (10) year offer, but that counsel's advice was deficient as he failed to present to Defendant an accurate representation of the strength of the State's case or the exposure Defendant faced at trial. At the evidentiary hearing, counsel testified that he conveyed both offers to the Defendant, but Defendant declined in hopes of receiving a lower offer of five years from the State. (See Hearing Transcript, August 17, 2006, pp. 7-8, attached). Counsel testified further that he urged Defendant to accept the ten year offer based on the strength of the State's case, but that Defendant still declined the offer. (See Hearing transcript, August 17, 2006, pp. 8-12, attached). The Court finds his testimony to be credible, and finds that Defendant failed to demonstrate how counsel's performance was deficient. As such, the Court finds that Defendant warrants no relief on ground one of his Motion for Post-Conviction Relief.

(Respondent's Ex. 16).

During the evidentiary hearing on Petitioner's Rule 3.850 motion, counsel for Petitioner testified that he entered into plea negotiations with the State. (Respondent's Ex. 15 at pg. 7). The State initially offered Petitioner a 15 year sentence. (Id.). Shortly before trial, the State offered Petitioner a 10 year sentence. (Id.). Petitioner rejected both offers because he wanted counsel to try

to get the State to offer him 5 years. (Id. at pg. 8). Counsel did try to get the State to offer 5 years, but the State only came down to 10 years. (Id.). Counsel did not specifically recall if he discussed with Petitioner that he could receive a 30 year sentence on both counts if he proceeded to trial and lost. (Id.). It was his practice, however, to always discuss the minimum and maximum sentences with his clients. (Id.). Counsel was "sure [he] told [Petitioner that] he was looking at 30 years Florida State Prison." (Id. at pg. 14). Finally, counsel testified that "I'm sure I urged [Petitioner] to take the ten years because the State's case was very strong." (Id. at pg. 12). To encourage Petitioner to accept the 10 year offer, counsel told Petitioner a story about a former client who rejected a 20 year prison term offer from the State. (Id. at pgs. 24-25). The client went to trial, lost, and was sentenced to 99 years in prison. (Id.). Years later, counsel received a letter from the client stating that the State's offer was "looking pretty good right now." (Id.). Counsel shared the story with Petitioner to illustrate that 10 years may sound like a lot of time but, after 20 years in prison, it will seem like it was a good offer. (Id.).

When Petitioner testified during the evidentiary hearing, he admitted that counsel told him that he could receive up to 30 years in prison on each count. (Id. at pgs. 29, 34). Petitioner testified that when counsel informed him that the State offered 15 years in prison, he stated "No, 15 years sounds like a lot. Why will I take 15 years if I have - - I have nothing to do with this case? It's not the way it is. No, I don't want to take the 15 years." (Id. at pg. 30). Petitioner also testified that counsel later informed him that the State made an offer of 10 years. (Id. at pgs. 30-31). Petitioner told counsel to "Please go back and get another offer." (Id. at pg. 31). Petitioner then testified that counsel told him "Well, I think we can win this, I think we have a chance and for the chance that they'll take it [sic], I think we can win it." (Id.). According to Petitioner, counsel told him not to take

5

the offer of 10 years. (Id.).

It is apparent from the testimony at the evidentiary hearing that counsel informed Petitioner of both the 15 year and 10 year offers by the State. It is also apparent that Petitioner told counsel that he did not want to take either offer. According to Petitioner, he told counsel he did not want to take the 15 year offer because he had "nothing to do with this case[.]" (Id. at pg. 30). Counsel testified that Petitioner was trying to get the State to agree to a 5 year sentence. Moreover, there is not dispute that counsel informed Petitioner that if he proceeded to trial, he was facing the possibility of a 30 year prison sentence on each count. Thus, Petitioner was clearly aware that if he proceeded to trial and lost, he could be sentenced up to 30 years in prison on each count.

Petitioner testified at the evidentiary hearing that counsel told him not to take the State's offer of 10 years because he thought he could win the case. Counsel, however, testified that he was sure he urged Petitioner to take the 10 year offer because "the State's case was very strong." The state court found counsel's testimony credible. *See Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) (A federal habeas court "must accept the state court's credibility determination . . . ."), *cert. denied*, 526 U.S. 1047 (1999). Thus, the record supports the conclusion that counsel informed Petitioner of the State's offers, informed Petitioner of the sentence he would be exposed to if he proceeded to trial, and encouraged Petitioner to accept the State's 10 year offer. Accordingly, Petitioner has failed to establish that counsel's performance was deficient.

Further, to show prejudice Petitioner must "establish a reasonable probability that, absent counsel's alleged ineffective assistance, he would have accepted the plea agreement." *Diaz*, 930 F.2d at 835 (11th Cir. 1991). It is apparent from the testimony during the evidentiary hearing that Petitioner did not want to accept the State's offers, but instead was seeking an offer of 5 years or less.

6

The state court's determination that Petitioner failed to demonstrate how counsel's performance was deficient was neither contrary to, nor an unreasonable application of *Strickland*. Accordingly, this claim is denied pursuant to 28 U.S.C. § 2254(d).

Ground Two

In Ground Two, Petitioner asserts that when his car was stopped by police, there were two passengers in the back seat of the car, co-defendants Mictil and Ortiz. Police found heroin on the rear floorboard. Police subsequently discovered more drugs and drug paraphernalia inside Ortiz's residence. Petitioner and Ortiz were tried together. Petitioner complains that counsel was ineffective in failing to move for severance of his and Ortiz's trial because the drugs and drug paraphernalia found inside Ortiz's residence were admitted at trial, but would have been inadmissible at Petitioner's trial had he been tried separately. Petitioner argues that there is a reasonable probability that the jury held Petitioner accountable for the evidence discovered at Ortiz's residence, and that the outcome of the trial would have been different if he had been tried separately.

Petitioner raised this claim in state court as Ground Two of his Rule 3.850 post-conviction motion. In denying the claim, the state post-conviction court stated:

> In ground two of his Motion, Defendant alleges ineffective assistance of counsel for failure to move for severance of defendants for trial. Specifically, Defendant contends that he and Roberto Ortiz should not have been tried as co-defendants because the Court admitted evidence in their trial that would have been inadmissible had Defendant been tried separately. He alleges that admitting such evidence, despite testimony showing there to be no link between said evidence and Defendant, confused the jury as to Defendant's guilt, thus resulting in his conviction. Therefore, he argues, his counsel's failure to move for severance of defendant's prejudiced Defendant at trial. The Court notes that,

>> [although] severance of defendants may be ordered when it is appropriate to promote a fair determination of the guilt or innocence of the defendants [] severance is not necessary when the

> evidence is presented in such a manner that the jury can distinguish the evidence relating to each defendant's acts, conduct, and statements, and can then apply the law intelligently and without confusion to determine the individual defendant's guilt or innocence.

*Gordon v. State*, 863 So.2d 1215, 1223 (Fla. 2003)(internal quotations omitted).

> A review of the record reflects that, at trial, the evidence was presented in such a manner as to allow the jury to distinguish the evidence relating to each defendant. (See State's response and cited record, attached). Further, in his closing argument, counsel addressed explicitly what evidence had no bearing on Defendant's guilt. (See State's Response and cited record, attached). Additionally, the record reflects that the jury was well informed by both counsel and the court about which charges each defendant faced. (See State's Response and cited record, attached). Therefore, the Court finds that the record conclusively refutes Defendant's allegation. As such, Defendant warrants no relief on ground two of his motion for Post-Conviction Relief.

(Respondent's Ex. 14).

The state post-conviction court did not address the deficiency prong of the *Strickland* analysis, but instead resolved the claim on the prejudice prong. To establish prejudice, Petitioner must demonstrate that the trial court would have granted his motion to sever. Count Three of the Information jointly charged Petitioner, Ortiz, Mictil, and Maria Morales with conspiracy to traffic in heroin. (Respondent's Ex. 1 at Record on Appeal pp. 23-32). Florida Rules of Criminal Procedure, Rule 3.150(b)(2) provides that two or more defendants may be charged in the same indictment or information when each defendant is charged with 1 or more offenses alleged to have been committed in the furtherance of a conspiracy. Thus, Rule 3.150(b)(2) allowed for the co-defendants to be charged together and proceed to trial together.[2]

---

[2] There is no allegation, or indication from the record before this Court, that any of the four defendants charged in the Information moved for and was granted severance. The record indicates that Defendant Mictil entered into a plea agreement with the State. (Respondent's Ex. 1 at Trial Transcript pp. 19, 47, 313-15). The record also indicates that Maria Morales entered a guilty plea to the charges against her. (Id. at p. 144).

Further, under Florida law, "severance is not necessary when the evidence is 'presented in such a manner that the jury can distinguish the evidence relating to each defendant's acts, conduct and statements, and can then apply the law intelligently and without confusion to determine the individual defendant's guilt or innocence.' " *Rimmer v. State*, 2010 Fla. LEXIS 2091, 35 Fla. L. Weekly S 745 (Fla. Dec. 16, 2010) (quoting *Farina v. State*, 801 So. 2d 44, 52 (Fla. 2001) (quoting *Coleman v. State*, 610 So. 2d 1283, 1285 (Fla. 1992)). The trial court's decision whether to grant a motion to sever is within the court's discretion and is only subject to review for an abuse of discretion. *Id.* (citing *Farina*, 801 So. 2d at 52). The Court is not persuaded by Petitioner's contention that his trial should have been severed from Ortiz's trial because there was a reasonable probability that the jury held Petitioner accountable for the drugs found in Ortiz's residence. During his opening statement, counsel for Petitioner stated in pertinent part:

> At the outside [sic], let me emphasize a point that we made during the jury selection process yesterday in that Mr. Ortiz and Orlando Adams have two different cases.
>
> ***
>
> Mr. Adams, for a point of clarification is not accused in this case of possessing any of the heroin in the house. The allegations against Mr. Adams focus only on the heroin in the car and there's a big difference there and it's a very significant difference, because the Court, Judge Ficarrotta is going to instruct you at the conclusion of the case as to different types of offenses.

(Respondent's Ex. 1 at Trial Transcript p. 49).

During cross examination of Detective Massucci, the following pertinent exchange took place between counsel for Petitioner and Detective Massucci:

Q. Now, Mr. Adams has not been shown to have any link at all with the narcotics or paraphernalia in the house; is that correct?

9

A. At the North 13th Street?

Q. Yes, sir.

A. No, we did not charge him with the drugs inside of the house.

(Id. at pp. 142-43).

During closing argument, counsel for Petitioner reminded the jury that:

[Petitioner] is not charged with the gun, nor is he charged with possession of the heroin found by the police in the house during the search. It has no bearing at all on Mr. Adams. There isn't any controversy about this.

(Id. at p. 366).

The trial court instructed the jury in pertinent part that:

Before you can find the Defendant, Orlando Adams guilty of trafficking in illegal drugs and this is as charged in Count Five of the Information, as it applies to Mr. Adams, and it deals with the substance found in the white Stratus car.

(Id. at p. 425).

Counsel's arguments, his cross examination of Detective Massucci, and the court's instructions enabled the jury to distinguish the evidence that pertained to each defendant. Petitioner has not demonstrated a reasonable probability that the jury held Petitioner accountable for the drugs found in Ortiz's residence. Moreover, in light of the overwhelming evidence regarding the drugs found in the car and of Petitioner's guilt, Petitioner has not shown a reasonable probability that the result of the trial would have been different had he been tried separately. *See Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003) ("To establish 'prejudice,' a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different.") (citations omitted).

The state court's denial of this claim was neither contrary to, nor an unreasonable application

of *Strickland.*  Accordingly, this claim is denied pursuant to 28 U.S.C. § 2254(d).

Ground Three

In Ground Three, Petitioner complains that counsel was ineffective in failing to move to dismiss Count Three of the Information, the conspiracy count, for vagueness.  Specifically, he argues that Count Three did not specify who conspired with whom, or whether more than one conspiracy was involved.  Count Three of the Information states:

> MARIA AILEEN MORALES AND ORLANDO ADAMS AND JORGE LUIS MICTIL AND ROBERTO BARBOSA ORTIZ, on the October day of 24th, 2001, in the County of Hillsborough and State of Florida, did knowingly agree, conspire, or confederate among themselves or other diverse persons, as part of a continuing common scheme or plan, to commit a felony, to wit: Trafficking in Heroin, in derogation of Florida Statute 893.135(1)( c), that is to say, to deliver or be in actual or constructive possession of four grams or more of any morphine, opium, oxycodone, hydromorphone, or any salt, derivative, isomer or salt of an isomer thereof, including heroin, as described in Florida Statute Section 893.08(1)(b) or (2)(a) or four grams or more of any mixture containing such substance or mixture, but less than 30 kilograms of such substance or mixture.

(Respondent's Ex. 1 at Record on Appeal pp. 24-25).

Petitioner raised this claim as Ground Three of his Rule 3.850 motion.  The state trial court denied the claim as follows:

> In ground three of his Motion, Defendant alleges ineffective assistance of counsel for failure to move for dismissal of count three from the Information. Specifically Defendant contends that his counsel should have moved to dismiss count three of the Information, Trafficking in Heroin, based on vagueness. A motion to dismiss a count from an Information is appropriate when the "information is so vague, indistinct and indefinite as to mislead the accused and embarrass him in the preparation of his defense or expose him after conviction or acquittal to substantial danger of a new prosecution for the same offense." Fla. R. Crim. P. 3.140(o). When an Information charges a defendant with conspiracy, the Information "must contain a statement of the facts relied on as constituting the offense in ordinary and concise language, with as much certainty as the nature of the case will admit, in such a manner as to enable a person of common understanding to know what is intended." *State v. Casesa*, 392 So.2d 1022, 1023 (Fla. 5th Dist Ct. App. 1981) (paraphrasing

11

*State v. Smith*, 240 So.2d 807 (Fla. 1970)); *see also State v. Salva*, 456 So.2d 954,955 (Fla. 3d Dist. Ct. App. 1984)(finding that an Information is sufficient if it supplies "the whys, hows, and wherefores of the charges").

A review of the record reflects that, as to the Information charging Defendant, count three states as follows:

Maria Aileen Morales and [Defendant] and Jorge Luis Mictil and Roberto Barbosa Ortiz, on the October day of 24th, 2001, in the County of Hillsborough and State of Florida, did knowingly agree, conspire, or confederate among themselves or other diverse persons, as part of a continuing common scheme or plan, to commit a felony, to wit: Trafficking in Heroin.

Information, November 14, 2001, attached.

The Court finds that the language of Count three is not so vague or overbroad as to fail to apprise Defendant of the criminal act allegedly committed to support his conspiracy charge. *See Lightbourne v. State*, 438 So.2d 380, 384 (Fla. 1983). Therefore, a motion to dismiss count three of the Information would be unfounded, and thus, Defendant has failed to show how counsel's performance was deficient. As such, Defendant's allegation in ground three warrants no relief.

(Respondent's Ex. 11).

Fla. R. Crim. P. 3.140(o) provides:

Defects and Variances. No indictment or information, or any count thereof, shall be dismissed or judgment arrested, or new trial granted on account of any defect in the form of the indictment or information or of misjoinder of offenses or for any cause whatsoever, unless the court shall be of the opinion that the indictment or information is so vague, indistinct, and indefinite as to mislead the accused and embarrass him or her in the preparation of a defense or expose the accused after conviction or acquittal to substantial danger of a new prosecution for the same offense.

"An information is fundamentally defective only where it totally omits an essential element of the crime or is so vague, indistinct or indefinite that the defendant is misled or exposed to double jeopardy." *State v. Burnette*, 881 So. 2d 693, 694-695 (Fla. 1st DCA 2004).

Section 893.135, Florida Statutes (2001), the statute under which Petitioner was charged in

12

Count Three of the Information, provided:

> (5) Any person who agrees, conspires, combines, or confederates with another person to commit any act prohibited by subsection (1) commits a felony of the first degree and is punishable as if he or she had actually committed such prohibited act. Nothing in this subsection shall be construed to prohibit separate convictions and sentences for a violation of this subsection and any violation of subsection (1).

In *State v. Smith*, 240 So. 2d 807 (Fla. 1970), the Florida Supreme Court held that:

> An indictment or information for conspiracy must contain a statement of the facts relied on as constituting the offense in ordinary and concise language, with as much certainty as the nature of the case will admit, in such a manner as to enable a person of common understanding to know what is intended, and with such precision that the accused may plead his acquittal or conviction to a separate indictment or information based on the same facts...The indictment or information should state the object or purpose of the conspiracy, but it is unnecessary to set forth the elements of the contemplated offense with the particularity and technical precision required in drawing an indictment or information charging the commission of such offense....

*Id*. at 809 (internal citations and citations omitted).

In Petitioner's case, the Information asserted that on October 24, 2001, Petitioner and the other three defendants conspired with each other to commit the felony of trafficking in heroin. (Respondent's Ex. 1 at Record on Appeal pp. 24-25).  The Information was not so vague, indistinct, and indefinite as to mislead Petitioner or embarrass him in the preparation of a defense and did not expose him to substantial danger of a second prosecution for the same offense.  Count Three of the Information was sufficiently precise to enable Petitioner to know the charge against him.  Petitioner presents no state or federal case law that holds that the charging document must specify whether there was one or more conspiracies, or whether the defendants conspired with all or only some of the other defendants.  Thus, Petitioner fails to demonstrate that had defense counsel moved to dismiss Count Three of the Information, there was a reasonable probability the motion would have been granted. Therefore, Petitioner cannot show counsel's performance was deficient, nor prejudice.

13

The result reached by the state trial court with respect to this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.  Accordingly, Ground Three does not warrant relief.

Ground Four

In Ground Four, Petitioner claims that counsel was ineffective in failing to move before trial for dismissal of Counts Three and Five of the Information where the State's evidence formed the basis for a subjective entrapment defense.  In the alternative, Petitioner claims counsel was ineffective in failing to assert a subjective entrapment defense at trial.  Specifically, Petitioner asserts that counsel should have raised an entrapment defense because the confidential informant, David Fussell ("Fussell"), initiated the contact with Petitioner and influenced Petitioner to participate in drug transactions.  Petitioner claims that there was no evidence indicating that he had a predisposition to commit the offenses.

Petitioner raised this claim as Ground Four of his Rule 3.850 motion.  The state trial court denied the claim as follows:

> In ground four of his Motion, Defendant alleges ineffective assistance of counsel for failure to raise a subjective entrapment defense. Specifically, he contends that, had counsel raised this defense before trial, a motion to dismiss counts three and five would have been successful, or, in the alternative, had counsel raised this defense during trial, it would have neutralized the State's case against Defendant. Further, Defendant asserts that he had no other affirmative defense available, thus counsel's failure to raise a subjective entrapment defense prejudiced him at trial. A review of the record reflects that, had counsel raised this defense before or during trial, the State had evidence to contradict such a defense and demonstrate a lack of inducement as well as Defendant's predisposition to commit the crime. (See State's Response and cited record attached). Therefore, the Court finds that Defendant has failed to demonstrate how counsel's failure to raise this defense prejudiced him. As such, Defendant warrants no relief on ground four of his motion.

(Respondent's Ex. 14).

14

In Florida, when dealing with subjective entrapment:

An accused has the initial burden of establishing by the preponderance of the evidence that he was induced to commit the crime. The accused must demonstrate that an agent of the government induced him or her to commit the crime. If the accused establishes inducement by the government then the accused must demonstrate a lack of predisposition to commit the crime. If the accused produces evidence establishing lack of predisposition, the state is given the opportunity to rebut the evidence beyond a reasonable doubt.

*Davis v. State*, 937 So. 2d 300, 303 (Fla. 4th DCA 2006). Petitioner asserts that he was induced to commit the crime because Fussell initiated the first contact with him, and made all of the arrangements to buy the heroin. Section 777.201(1), Florida Statutes (2001), states that entrapment occurs when law enforcement or its agent "induces or encourages and, as a direct result, causes another person to engage in conduct constituting [a] crime by employing methods of persuasion or inducement which create a substantial risk that such crime will be committed by a person other than one who is ready to commit it." "The fact that government agents 'merely afford opportunities or facilities for the commission of the offense does not' constitute entrapment." *Munoz v. State*, 629 So. 2d 90 (Fla. 1993) (quoting *Sherman v. United States*, 356 U.S. 369, 372-73 (1958)). Thus, Petitioner does not demonstrate entrapment merely because Fussell afforded Petitioner the opportunity to sell him heroin by initiating the contact between them. Further, the taped telephone conversations between Fussell and Petitioner refute that Petitioner was induced by Fussell to commit the offense. Fussell told Petitioner that he had $4,000.00 to buy the drugs. (Respondent's Ex. 1 at Trial Transcript pp. 161-62). Petitioner responded in pertinent part that he "tried calling [Fussell's] number." (Id. at p. 162). He then told Fussell to give him his new cellphone number because he would "go get [the drugs] right now from the guy and then [] come back here and do it..." (Id.). Thereafter, Petitioner controlled the deal by instructing Fussell where and when to meet him, and

15

informing Petitioner how much the supplier was charging for the drugs. (Id. at pp. 161-171). Moreover, Petitioner's conversations with Fussell show that he was familiar with the subject matter, and that he spoke in codes to attempt to avoid detection by law enforcement. (Id.).

Further, the record refutes Petitioner's claim that he was not predisposed to commit the offense. Before trial, counsel for Petitioner argued that the State should not be allowed to introduce evidence that before the date of the charged offense, Fussell had purchased heroin from Petitioner over the course of a year. (Respondent's Ex. 1 at Trial Transcript pp. 16-18). If Petitioner had alleged entrapment as a defense, evidence of his prior drug transactions would have been admissible to disprove the entrapment. *See Munoz v. State*, 629 So. 2d at 95. Thus, Petitioner has failed to establish that counsel's failure to raise the entrapment defense was deficient performance. Further, Petitioner has not shown prejudice.

Upon review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on Ground Four.

Ground Five

In Ground Five, Petitioner asserts that counsel was ineffective in failing to object to the State's introduction of the tape recordings of the telephone conversations between Fussell and both Petitioner and co-defendant Maria Morales. Petitioner argues that counsel should have objected to the tape recordings because the State did not establish that Fussell gave his consent to law enforcement to record the conversations.

16

Petitioner raised this claim as Ground Five of his Rule 3.850 motion.  The state trial court denied the claim as follows:

> In ground five of his Motion, Defendant alleges ineffective assistance of counsel for failure to object to the State's use of tape-recorder phone conversations between Defendant and a police informant. Specifically, Defendant contends that his counsel should have objected to the State's introduction of such evidence because the State failed to first introduce the requisite proof to show that the informant had given consent to be tape-recorded. Further, Defendant alleges that counsel's failure to object to this evidence rendered his performance deficient.

> Florida Statutes Section 934.03(2)( c) provides that:

> > It is lawful [] for an investigative or law enforcement officer or a person acting under the direction of an investigative or law enforcement officer to intercept a wire, oral, or electronic communication when such person is a party to the communication or one of the parties to the communication has given prior consent to such interception and the purpose of such interception is to obtain evidence of a criminal act.

> *Fla. Stat.* 934.03(2)( c).

> Absent proof of consent from one of the parties to the communication, disclosure of the communication is prohibited. *See Payne v. State*, 562 So.2d 372,373 (Fla.4th Dist. Ct App. 1990); *see also State v. Welker*, 536 So.2d 1017 (Fla. 1988); *Daniels v. State*, 806 So.2d 563 (Fla. 4th Dist. Ct. App. 2002).

> A review of the record reflects that the testimony presented at trial demonstrates that the informant had consented to being recorded, or, at the very least, illustrates that consent may be inferred. (See Transcript, September 10, 2001, pp. 155-160). The informant testified to making calls to Defendant under law enforcement's specific instructions, and testified to his knowledge of the tape recording. (See id.). Additionally, the Florida Supreme Court has stated that there is nothing in Section 934.03(2)( c) to suggest that "consent must be proven *only* by the testimony of the consenting party." *State v. Welker*, 536 So.2d 1017,1020 (Fla.1988)(emphasis added). By so stating, the Supreme Court implies that having the "consenting party" testify is one way to show consent. In the present case, the Court finds sufficient evidence to conclusively refute Defendant's allegation. As such, Defendant warrants no relief on ground five of his Motion.

(Respondent's Ex. 11).

17

The record shows that Detective Massucci instructed the informant, Fussell, to contact a potential drug supplier. (Respondent's Ex. 1 at Trial Transcript p. 64). Fussell called Petitioner on his telephone. (Id.). Detective Massucci listened to "Fussell's half" of the conversation while recording the conversation with a tape recorder. (Id. at p. 65). Then, Fussell made several more phone calls to Petitioner, negotiating the drug deal while Detective Massucci instructed Fussell and recorded the conversations. (Id. at pp. 66-67). Fussell then met Petitioner at a convenience store, went into Petitioner's car, and bought heroin from Petitioner. (Id. at pp. 70-72).

Thereafter, Detective Massucci instructed Fussell to make more phone calls to Petitioner. (Id. at p. 79). Most of the calls were recorded. (Id.). Some of the calls were not recorded because Fussell and Detective Massucci were moving from place to place, and Detective Massucci did not have the equipment ready. (Id.).

The record shows that Fussell was working as an informant for Detective Massucci. Detective Massucci instructed Petitioner to make the phone calls to Petitioner. Detective Massucci was present while Fussell made the phone calls to Petitioner. Detective Massucci used a "simple cassette player" to record the conversations.

Although the record does not indicate whether explicit consent was given, Fussell appears to have given his implicit consent to Detective Massucci to record his telephone conversations with Petitioner. Detective Massucci instructed Fussell to make the calls to Petitioner, was present with Fussell when he made the calls, and was recording the conversations with a device like a "cassette player." There is no indication from the record that Fussell could not see the recording device, or did not know that the conversations were being recorded. *Cf. United States v. Corona-Chavez*, 328 F.3d 974, 978 (8th Cir. 2003) ("When someone voluntarily participates in a telephone conversation

18

knowing that the call is being intercepted, this conduct supports a finding of implied consent to the interception."). Therefore, Petitioner has failed to demonstrate that counsel's performance was deficient because he did not object to admission of the tape recorded conversations on the basis of lack of consent.

Finally, Petitioner does not demonstrate prejudice because he does not show that there is a reasonable probability that the result of the trial would have been different had the recorded conversations been excluded from the trial. *Henderson v. Campbell*, 353 F.3d at 892. The recorded conversations did not constitute the sole evidence against Petitioner. Fussell testified that Petitioner handed the heroin to him while they were in Petitioner's car. (Respondent's Ex. 1 at Trial Transcript p. 191). Detective Massucci saw Petitioner in the car with Fussell, then Fussell left and gave Detective Massucci the bags of heroin Petitioner had given him in the car. (Id. at pp. 70-72). Later that night, the officers conducting surveillance saw Petitioner and Morales drive to Ortiz's residence and pick up Ortiz and Mictil. (Id. at p. 129). When the car returned to Ortiz's residence, the officers stopped Petitioner's car. (Id. at p. 130). The car was occupied at that time by Petitioner and the three other co-defendants. (Id. at pp. 85-93). Two bags of heroin were discovered in Petitioner's car. (Id. at p. 87). Thus, there was substantial evidence, other than the recorded conversations, from which the jury could have concluded that Petitioner was guilty.

The state court's denial of this claim was neither contrary to, nor an unreasonable application of *Strickland*. Accordingly, this claim is denied pursuant to 28 U.S.C. § 2254(d).

Ground Six

In Ground Six, Petitioner complains that counsel was ineffective in failing to object to a principal jury instruction. Petitioner asserts that the principal jury instruction was vague and

prejudicial because it did not specify to which counts the instruction applied.

Petitioner raised this claim as Ground Six of his Rule 3.850 motion. The state trial court denied the claim as follows:

> In ground six of his Motion, Defendant alleges ineffective assistance of counsel for failure to object to the principal jury instruction. Specifically, Defendant contends that the principal jury instruction was vague and misleadingly prejudicial, as it did not specify for the jury to which counts the instruction applied. He states further that he was prejudiced by his counsel's failure to object to this instruction and preserve this issue for appeal. However, the Court notes that an allegation of ineffective assistance of counsel for failure to object to jury instructions is inappropriate unless those instructions had been invalidated at the time of trial. *See Nixon v. State*, 2006 Fla. LEXIS 651, *9, n.6 (Fla. 2006); *see also Waterhouse v. State*, 792 So.2d 1176 (Fla. 2001), *Thompson v. State*, 759 So.2d 650 (Fla. 2000), *Downs v. State*, 740 So.2d 506 (Fla. 1999), *Harvey v. Dugger*, 656 So.2d 1253 (Fla.1995). The principal jury instruction given at trial had not been invalidated, and thus, Defendant cannot demonstrate that counsel's failure to object constituted ineffective assistance. As such, the Court finds that Defendant warrants no relief on ground six of his Motion.

(Respondent's Ex. 11).

The judge charged the jury using Florida's standard jury instruction on "principals." (Respondent's Ex. 1 at Record p. 81, Trial Transcript p. 437).[3] Defense counsel is not deficient for failing to object to a standard jury instruction that has not been invalidated by the Florida Supreme Court. *Thompson v. State*, 759 So.2d 650, 665 (Fla. 2000). Moreover, under Florida Statutes, Section 777.011, a person is a principal in the first degree whether he actually commits the crime or

---

[3]The instruction read:

   If a defendant helped another person commit or attempt to commit a crime, the Defendant is a principal and must be treated as if the defendant had done all the things the other person or persons did if:

   One, the defendant had a conscious intent that the criminal act be done; and, two, the Defendant or Defendants did some act or said some word which was intended to and which did incite, cause, encourage, assist or advise the other person or persons to actually commit or attempt to commit the crime

   To be a principal, the defendant does not have to be present when the crime is committed or attempted.

(Respondent's Ex. 1 at Trial Transcript p. 437).

merely aids, abets or procures its commission. *State v. Roby*, 246 So. 2d 566, 571 (Fla. 1971). The evidence shows that Petitioner: 1) arranged a drug deal with Fussell; 2) sold Fussell heroin; 3) arranged another drug deal with Fussell; 4) drove with Maria Morales to Ortiz's residence where he picked up Ortiz and Mictil; 5) police stopped the car that Petitioner was driving and in which the other defendants were passengers; and 6) the police found two bags of heroin in the car. Petitioner offers no valid legal basis for objecting to the instruction. Because the jury was properly instructed under Florida law, defense counsel was not ineffective in failing to object to the jury instruction on principals.

The result is the same when the claim is analyzed in federal constitutional terms. In making the determination of whether any error or omission in a jury charge was so prejudicial as to amount to a violation of due process, *Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983), the court will not judge portions of the jury charge, or even the entire charge, standing alone. The defendant's right to due process is not violated unless an erroneous instruction, when viewed in light of the entire trial, was so misleading as to make the trial unfair. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

In Petitioner's case, it is objectively reasonable to conclude that the instructions given his jury were not so misleading as to violate his right to due process. Petitioner speculates the jury could have found him guilty based on evidence that was applicable to his co-defendants' conduct. However, it is objectively reasonable to conclude the instructions given adequately guided the jury on the elements of the offenses, and did not relieve the State from having to prove Petitioner's guilt by proving every element of the charges. (Respondent's Ex. 1 at Trial Transcript pp. 421-47). Even if counsel had made the arguments Petitioner contends counsel should have made, there was no

21

reasonable probability of a different outcome.

The state court's denial of this claim was neither contrary to, nor an unreasonable application of *Strickland*.   Accordingly, this claim is denied pursuant to 28 U.S.C. § 2254(d).

Ground Seven

In Ground Seven, Petitioner complains that counsel was ineffective in failing to request a cautionary instruction on the conspiracy count.   Petitioner asserts that the State established its theory of conspiracy by introducing out-of-court statements made by co-defendant Maria Morales during a telephone conversation with Fussell.   He avers that Section 90.803(18)(e), Fla. Stat., provides for cautionary instructions to be given when out-of-court statements are introduced at trial.   He argues that a reasonable probability exists that because counsel failed to request a cautionary instruction, the jury held the State to a lesser burden of proof on the conspiracy count.

Petitioner raised this claim as Ground Seven of his Rule 3.850 motion.   The state trial court denied the claim as follows:

> In ground seven of his Motion, Defendant alleges ineffective assistance of counsel for failure to request a cautionary instruction on count three. Specifically, Defendant  contends that the State demonstrated its theory of conspiracy by introducing out-of-court statements made by co-defendant Maria Alleen Morales, and that, as a result, Defendant's counsel should have requested a cautionary instruction. He argues further that counsel's failure to request such an instruction rendered his performance deficient. Initially, the Court ruled that Defendant had failed to identify clearly in his Motion any statements that would give rise to counsel requesting a cautionary instruction, but granted Defendant an evidentiary hearing on this allegation in an abundance of caution. (See Amended Order Denying, In Part, Motion for Post-Conviction Relief, and granting Evidentiary Hearing, attached). At the evidentiary hearing, counsel testified that he did not feel the need to object to codefendant Morales' out-of-court statements because he did not find them to be harmful to Defendant's case. (See Hearing Transcript, August 17, 2006, pp. 20,26, attached). Counsel testified further that his decision not to request a cautionary instruction based on these statements was strategic, as such an instruction would have been confusing to the jury, and asking for such an instruction "falls into the same

category as objecting too much; all you're doing is really highlighting your problems to the jury." See Hearing Transcript, August 17, 2006 pp.25-26, 36-37, attached). The Court will not second-guess reasonable strategic decisions on collateral attack. *See Johnson v. State*, 769 So.2d 990,1001 (Fla. 2000). As such, the Court finds that Defendant has failed to demonstrate how counsel's performance was deficient, and thus warrants no relief on ground seven of his Motion for Post-Conviction Relief.

(Respondent's Ex. 17).

"Under Florida law, a coconspirator's hearsay statement is admissible if the statement was made 'during the course, and in furtherance, of the conspiracy.'" *Tejada v. Dugger*, 941 F.2d 1551, 1561 (11th Cir. 1991) (quoting Fla. Stat. § 90.803(18)(e)). Section 90.803(18)(e) provides the following hearsay exception:

> A statement by a person who was a coconspirator of the party during the course, and in furtherance, of the conspiracy. Upon request of counsel, the court shall instruct the jury that the conspiracy itself and each member's participation in it must be established by independent evidence, either before the introduction of any evidence or before evidence is admitted under this paragraph.

Petitioner does not identify any statement made by Maria Morales that was introduced at trial. Nevertheless, the trial transcript indicates that Detective Massucci testified in pertinent part that when Fussell spoke on the phone with Petitioner, Petitioner put Maria Morales on the phone and she "tried to re-assure Mr. Fussell that they weren't trying to rob him and that there was no danger." (Respondent's Ex. 1 at Trial Transcript p. 140). The trial transcript also indicates that Fussell testified in pertinent part that Petitioner handed the telephone to Maria Morales who told Fussell "don't worry about it, everything's fine." (Id. at p. 192).

During the evidentiary hearing on Petitioner's Rule 3.850 post-conviction motion, counsel for Petitioner testified in pertinent part that there was additional evidence beyond Maria Morales' statements that was sufficient to prove the conspiracy. (Respondent's Ex. 15 at p. 26). Further, he

23

testified that in his opinion, Maria Morales' statements were "not a very significant part of the trial." (Id.).  Finally, he testified that he did not believe that the cautionary instruction "makes any sense to a lay person[,]" and that "asking for...extraneous instructions...falls in the same category as objecting too much; all you're doing really is highlighting your problems to a jury, so I didn't ask for it and Dirk Weed didn't ask for it because I didn't think it was going to do us any good."  (Id. at pp. 25-26).

Also, during trial counsel for Petitioner attempted to use Maria Morales' statements to establish that there was no conspiracy between Petitioner and another person.  During cross examination, Fussell admitted that during his telephone conversations with Petitioner, he also spoke to Maria Morales when he "had difficulty understanding [Petitioner,]" and that Maria Morales tried to talk Fussell into meeting "at the place where [Fussell] didn't want to meet[.]" (Respondent's Ex. 1 at Trial Transcript p. 189).  Further, during his closing argument, counsel for Petitioner stated in pertinent part:

> The first areas [sic] of disagreement is the conspiracy count.  Now, the Court is going to instruct you that an agreement to commit a crime is the crux, the cornerstone of a conspiracy.  Now the problem we have in this case is that there isn't any evidence of an agreement, save the fact that these people were arrested together.
>
> Now, had Mr. - - or, I'm sorry, Ms. Morales testified, maybe the situation would have been different, but, of course, you can't speculate about the evidence that has not been introduced.
>
> \*\*\*
>
> So, while there might have been a conspiracy involving one or more, or two or more of these people, there isn't any evidence of it.
>
> \*\*\*
>
> I think it also reflects in varying degrees of culpability that we talked about

24

during jury selection. He is a small fry in this case. No [one] said that he ever had possession of 25 grams of heroin, actual or constructive. And we'll talk about that in a moment.

In fact, Mr. Mictil appeared and testified that Ms. Morales, who was going to provide substantial assistance and has absconded was going to or had the heroin in the car. In other words, Mr. Adams is in precisely the same situation as Mr. Fussell found himself. He needed to feed his monkey...

(Id. at p. 367). Thus, it is apparent counsel for Petitioner attempted to use Maria Morales' out-of-court statements to Petitioner's advantage by highlighting that: 1) Fussell spoke to her when he had trouble understanding Petitioner; 2) she attempted to convince Fussell into meeting for the second drug transaction; and 3) Mictil testified that Morales was the individual in possession of the heroin when the police stopped Petitioner's car. Further, he argued to the jury that Petitioner was merely a heroin addict caught up in all the activity, and intimated that Morales may have been the one involved in a conspiracy with other co-defendants.

Petitioner has not "overcome the presumption that, under the circumstances," counsel not requesting the cautionary instruction "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citation omitted). Therefore, the state courts' resolution of this claim was not objectively unreasonable.

Moreover, Petitioner appears to argue that there was no other evidence independent of Maria Morales' statements establishing Petitioner's involvement in the conspiracy. This Court disagrees. The trial court instructed the jury in pertinent part that to find Petitioner guilty of conspiracy, the State had to prove: 1) that Petitioner intended to commit the offense of trafficking in heroin; and 2) in order to carry out that intent, Petitioner "agreed, conspired, combined or confederated with" Ortiz "to cause the crime of trafficking in heroin to be committed either by them or one of them or by

some other person." (Respondent's Ex. 1 at Trial Transcript pp. 423-24). "Both the agreement and an intention to commit an offense are essential elements of a conspiracy. However, direct proof of an agreement is not necessary to establish a conspiracy....Circumstantial evidence may support the existence of a conspiracy..." *Reynolds v. State*, 983 So. 2d 1192, 1195 (Fla. 3d DCA 2008) (internal citation and citation omitted).

In Petitioner's case, the State introduced circumstantial evidence, besides Maria Morales' statements, of Petitioner's involvement in a conspiracy to traffic in heroin. The State introduced a tape recording of Fussell's telephone conversation with Petitioner in which Petitioner stated in pertinent part that he had talked to "the guy" who wanted $4,000.00 for "25 people." (Id. at p. 166). Fussell testified that "25 people" means 25 grams. (Id. at pp. 172-73). In a later telephone conversation at 11:18 p.m., Petitioner stated "I called the guy. The guy isn't there. Give me one hour more - - ." (Id. at pp. 168-69). Petitioner also said in pertinent part "He said he need [sic] a little bit more time. A little bit more time and he'll be done." (Id. at p. 170). At 11:52 p.m., surveillance followed Petitioner's car to a residence where Petitioner and Morales picked up Ortiz and Mictil. (Id. at pp. 128-29). When the car later returned to the residence, the police arrested the occupants of the car: Ortiz, Mictil, Morales, and Petitioner. (Id. at pp. 130, 93). Two bags of heroin were discovered on the rear floorboard of the car. (Id. at p. 87).

"To establish prejudice, a 'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' In assessing prejudice, courts 'must consider the totality of the evidence before the judge or jury.'" *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2264 (2010) (quoting *Strickland*, 466 U.S. at 694-95) (internal citation omitted). In light of all the other evidence of Petitioner's guilt, it is not reasonably

likely that had the state court given the curative instruction, that the result of the trial would have been different.

The state court's denial of this claim was neither contrary to, nor an unreasonable application of *Strickland*. Accordingly, this claim is denied pursuant to 28 U.S.C. § 2254(d).

## EVIDENTIARY HEARING

An evidentiary hearing is unnecessary as it "plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief." *Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2002).

Accordingly, the Court **ORDERS** that:

1. The petition for writ of habeas corpus (Dkt. 1) is **DENIED**.

2. The clerk is directed to enter judgment against Petitioner, terminate any pending motions, and close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). (Id.). "A [COA] may issue... only if the applicant has made a substantial showing of the denial of a constitutional right. § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)(quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve

encouragement to proceed further.'"  *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003)(quoting

*Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).  Petitioner cannot make the requisite showing

in these circumstances.

   Finally, because Petitioner is not entitled to a COA, he is not entitled to appeal   *in forma*

*pauperis*.

   **DONE AND ORDERED** in Tampa, Florida on ___January 20th___, 2011.


          _____
          JAMES D. WHITTEMORE
          United States District Judge

SA: sfc
Copy to:
Petitioner, *pro se*
Counsel of record